J-A12023-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: LIEN ASSERTED AGAINST | : | IN THE SUPERIOR COURT OF |
| MATTHEW HEFFRAN | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MATTHEW HEFFRAN | : | No. 2140 EDA 2013 |

Appeal from the Judgment Entered October 30, 2013,
In the Court of Common Pleas of Pike County,
Civil Division, at No. 1389-2012.

BEFORE: SHOGAN, FITZGERALD* and PLATT**, JJ.

MEMORANDUM BY SHOGAN, J.:             **FILED SEPTEMBER 03, 2014**

Appellant, Matthew Heffran, appeals from the judgment entered on

October 30, 2013, in the Pike County Court of Common Pleas. After review,

we vacate the judgment entered on the verdict, reverse the order granting a

directed verdict for Appellee and dismissing Appellant's counterclaims, and

remand for a new trial.

The trial court set forth the relevant facts and procedural history of

this matter as follows:

> This case arose out of a motor vehicle accident on July 26,
> 2007 in which the Appellant, Matthew Heffran, was injured. As a
> result of his work-related injuries, Appellant received workers
> compensation benefits from Eastern Alliance Insurance Group
> (hereinafter "EAIG"). On April 1, 2011, Appellant and EAIG
> agreed to a compromise and release of the workers'
> compensation benefits.
>
> According to the parties' April 1, 2011 Compromise and
> Release Agreement, EAIG's total subrogation lien, at that time,
> was $32,741.96. This amount consisted of $13,288.41 in wage

_____

*Former Justice specially assigned to the Superior Court.
**Retired Senior Judge assigned to the Superior Court.

loss payments and $19,453.55 in medical payments. In addition, the Compromise and Release Agreement contained a clause where EAIG agreed to waive $17,000 of its subrogation lien on any third party claim that Appellant chose to pursue.

On May 17, 2012, Appellant settled a related third party action against Charles Bolte in the amount of $100,000. As a result, EAIG asserted a workers compensation subrogation lien against Appellant. Suffice it to say, the parties had significant disagreement over the exact amount of the subrogation lien owed by the Appellant to EAIG. Appellant thereafter filed a Petition with this Court on July 9, 2012 requesting that the disputed funds be paid into the Court for adjudication.

By Order dated August 28, 2012, this Court directed Appellant's counsel to pay into court the sum of $27,923.01 which was the alleged disputed amount. On September 10, 2012, EAIG filed a Petition seeking, *inter alia*, reimbursement of its subrogation lien in the alleged amount of $60,629.59. On October 1, 2012, Appellant filed an Answer to EAIG's Petition with a Counter-Claim. On March 13, 2013, this Court entered an Order denying EAIG's Petition.

EAIG thereafter filed a Motion for Summary Judgment on April 26, 2013. On May 28, 2013, this Court granted in part and denied in part EAIG's Motion for Summary Judgment. This Court granted the Motion with regards to the fact that EAIG was entitled to a workers' compensation subrogation lien against Appellant. The Motion was denied, however, regarding the specific amount of the lien, which remained a genuine issue of material fact.

A Jury Trial was held in this matter on June 18, 2013. At the trial, Appellant and EAIG introduced testimony and evidence of the third party settlement amount of $100,000 as well as Appellant's reasonable attorney fees in the amount of $33,333.34 in procuring that settlement. Further, evidence was presented of indemnity and medical payments totaling $60,629.59 and the previously agreed upon credit of $17,000 towards the subrogation lien.

After both Appellant and EAIG had rested their cases, but before closing arguments, this Court determined that no genuine issue of material fact remained in dispute between the parties. On EAIG's sole claim for relief, we determined that the amount of subrogation lien owed by Appellant to EAIG was $23,319.72 which was the amount determined to be owed by Appellant's expert witness,[1] James Haggerty, Esquire. This Court also determined that Appellant had failed to meet his burden of clear and convincing evidence for the fraud claims of his Counter-claim as a matter of fact and law. EAIG's motion for directed verdict was therefore granted that same day.

Appellant filed a Motion for Post-Trial Relief on June 27, 2013, alleging that this Court erred by finding that fraud had not been proven by clear and convincing evidence. The Motion also alleged that this Court was in error when it found there to be no issues of material fact for determination by the jury. This Court denied the Appellant's Motion on July 10, 2013.

Trial Court Opinion, 9/12/13, at 1-3.

On July 16, 2013, Appellant filed an appeal to this Court. Procedurally, the appeal was premature, as judgment had not been entered on the verdict. *See Johnston the Florist v. TEDCO Construction Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (an appeal lies from the entry of judgment and not an order denying a post-trial motion). Ultimately, judgment was

_____

[1] While the trial court refers to Attorney Haggerty as an expert witness at page three of its opinion, the trial court goes on to state that it never formally qualified Attorney Haggerty as an expert at page six. Indeed, the record confirms that Attorney Haggerty was not formally qualified as an expert. However, this does not alter our ultimate conclusion. Despite the trial court's reliance on Attorney Haggerty's testimony, had Attorney Haggerty not testified at all, there would still be the record documents and demands for payments in excess of the amount that was due. Petitioner's Exhibits 1-10, N.T., 6/18/13, at 141.

entered on October 30, 2013. This procedural anomaly does not hamper our appellate review, and we shall proceed with our discussion.[2] *Id*.

On appeal, Appellant raises the following three issues for this Court's consideration:

> Whether the Court of Common Pleas of Pike County erred in determining that Appellant had not shown fraud by clear and convincing evidence?

> Whether the Appellant had additional claims, outside of fraud, which it had proven sufficiently?

> Whether the Court of Common Pleas of Pike County erred in determining that no genuine issue of material fact remained on the issues of bad faith, fraud, bad intent, deception, misrepresentation, purpose, malice, outrageousness, wantonness, oppressiveness and reckless indifference?

Appellant's Brief at 5 (full capitalization omitted).

As all of Appellant's issues are interrelated and essentially seek the same relief, we shall address them concurrently. As noted above, Appellant claims the trial court erred in determining that Appellant had not shown fraud by clear and convincing evidence and asserts that there was a sufficient basis for the issue of punitive damages to be presented to the jury.

---

[2] This court has held that quashing a premature appeal is an unnecessary expenditure of judicial resources where the decision on appeal is otherwise final and the only barrier to this Court's appellate review is the entry of judgment. *Johnston the Florist*, 657 A.2d at 514. This is true because one of the parties would inevitably *praecipe* for the entry of judgment, and a subsequent appeal would follow. *Id*.

Our standard of review when considering motions for a directed verdict and a judgment notwithstanding the verdict ("JNOV") are identical. This Court will reverse a trial court's grant or denial of a directed verdict or JNOV only when we conclude that there was an abuse of discretion or an error of law that controlled the outcome of the case. *International Diamond Importers, Ltd. v. Singularity Clark, L.P.*, 40 A.3d 1261, 1267 (Pa. Super. 2012).

> Further, the standard of review for an appellate court is the same as that for a trial court.
>
>> There are two bases upon which a JNOV can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adversely to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*International Diamond Importers, Ltd.*, 40 A.3d at 1267 (quoting *Janis v. AMP, Inc.*, 856 A.2d 140, 143-144 (Pa. Super. 2004))(internal quotation marks and citations omitted). Additionally, it is well settled that while the existence of fraud is a jury question, evidence of fraud must be clear and convincing, and whether the evidence of fraud justifies its submission to the jury is a question of law for the court. *Greenwood v. Kadoich*, 357 A.2d

604, 606 (Pa. Super. 1976). In reviewing questions of law, our standard of review is *de novo* and our scope of review, to the extent necessary to resolve this question of law, is plenary. ***Swords v. Harleysville Insurance Companies***, 883 A.2d 562, 567 (Pa. 2005). Finally, punitive damages are appropriate only in cases of outrageous behavior, where the defendant's egregious conduct shows either an evil motive or reckless indifference to the rights of others. ***J.J. DeLuca Co., Inc. v. Toll Naval Associates***, 56 A.3d 402, 415 (Pa. Super. 2012). Punitive damages are appropriate when the defendant's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct. ***Id***. at 415-416.

Here, the trial court granted Appellee's motion for a directed verdict and dismissed Appellant's counterclaim for fraud among other claims for relief. The trial court concluded that Appellee's demand for payment from Appellant, wherein Appellee demanded from Appellant the full $60,629.59, which was the total paid out, without subtracting attorney's fees and the agreed-upon waiver of an additional $17,000.00, was a "mistake." Trial Court Opinion, 9/12/13, at 5. The trial court then cited to the testimony of Attorney James Haggerty, who Appellant called as an expert witness. The trial court supported its conclusion that there was no proof of fraud or outrageousness on Appellee's part based on Attorney Haggerty's testimony. ***Id***. The trial court stated that Attorney Haggerty testified Appellant's

demand of the full $60,629.59 was merely a mistake. *Id*. We are constrained to disagree.

The trial court is correct that Attorney Haggerty testified Appellee was owed $23,319.72. Trial Court Opinion, 9/12/13, at 3. However, that was not the amount Appellee demanded and Attorney Haggerty never testified that $23,319.72 was the amount demanded. Additionally, contrary to the trial court's conclusion, the record reveals that Attorney Haggerty never stated that Appellee's demand for the full $60,629.59 was a "mistake." Rather, Attorney Haggerty testified that the email in which Appellee averred that the total paid out on the claim was $27,000.00, as opposed to the actual total of $60,629.59, was a mistake. N.T., 6/18/13, at 80. Attorney Haggerty explained that if Appellee had only paid out $27,000.00, when that number is reduced by $9,000.00 reflecting the one-third for attorney's fees, and then reduced again by the $17,000.00 that Appellee's agreed to waive, the amount of Appellee's lien would only have been $1,000.00, and **that would be the mistake**. *Id*. (emphasis added). Attorney Haggerty then commended Appellant for not taking advantage of Appellee's error and claiming that he owed only $1,000.00. *Id*.

Thus, there is no support for the trial court's conclusion that Appellee's demand for $60,629.59, without subtracting attorney's fees or the agreed-upon $17,000.00, was a mistake. Rather, Appellee's intent regarding its

repeated claim that it was owed the full $60,629.59 remains at issue. For this reason, we conclude that reasonable minds could disagree on the outcome of the case and that a verdict for Appellee was not a certainty. *International Diamond Importers, Ltd.*, 40 A.3d at 1267.

Moreover, because Appellee's intent is at issue, Appellant's counterclaims should not have been dismissed. As noted above, there is no evidence that Appellee's demand for the full amount of $60,629.59 was a mistake; Appellee, sought to recover from Appellant an amount to which it knew it was not entitled. N.T., 6/1/8/13, at 162-163. We conclude that this satisfies the threshold requirement of clear and convincing evidence, and Appellant's fraud claim should have been considered by the jury. Additionally, Appellant's remaining claims, which were summarily dismissed by the trial court, and the decision as to whether Appellee's conduct was outrageous, permitting an award of punitive damages, should also have been considered by the jury. *Greenwood*, 357 A.2d at 606; *J.J. DeLuca Co., Inc.*, 56 A.3d at 415.[3]

For the reasons set forth above, we conclude that the trial court erred in concluding that there was no genuine issue of material fact and that Appellant failed to support its allegation of fraud by clear and convincing

---

[3] Additionally, and for these same reasons, there is no indication in the record before us that Appellee was entitled to judgment as a matter of law on Appellant's counterclaims. *International Diamond Importers, Ltd.*, 40 A.3d at 1267.

evidence. Appellee's claims should have been decided by the jury. Moreover, Appellant's counterclaims and the issue of punitive damages should also have been decided by the jury. Therefore, we vacate the judgment entered on the verdict and reverse the order granting a directed verdict for Appellee and dismissing Appellant's counterclaims, and we remand for further proceedings.

Judgment vacated. Order reversed. Case remanded for a new trial. Jurisdiction relinquished.

PLATT, J., files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/3/2014